UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KURTULUS KALICAN,<br>    *Plaintiff*, | ) | 3:23-cv-402 (SVN) |
| | ) | |
| v. | ) | |
| | ) | |
| BISHOP,<br>    *Defendant*. | )<br>) | July 26, 2024 |

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Kurtulus Kalican, proceeding *pro se*, brings this action related to his assault by inmate Doe, now identified as inmate Rashid, pursuant to 42 U.S.C. § 1983. Following initial review, the remaining claim is an Eighth Amendment claim for deliberate indifference to safety/failure to protect against Defendant Captain Bishop in his individual capacity. *See* ECF No. 10. Defendant moves for summary judgment on the ground that Plaintiff failed to properly exhaust his administrative remedies before filing suit. For the following reasons, Defendant's motion is GRANTED.

    **I.    FACTUAL BACKGROUND**

The following facts are taken from the parties' Local Rule 56(a) Statements and supporting exhibits. In his Local Rule 56(a)2 Statement, Plaintiff adopts all facts set forth in Defendant's Local Rule 56(a)1 Statement, and sets forth additional facts in a declaration. *See* Pl.'s L.R. 56(a) 2 St., ECF No. 22-1; Kalican Decl., ECF No. 22.

The incidents underlying this action occurred while Plaintiff was confined at MacDougall-Walker Correctional Institution ("MacDougall"). Pl.'s L.R. 56(a)2 St. ¶ 4. On January 2, 2022, Plaintiff sent an Inmate Request to Defendant asking to be moved from his current cell, H-unit cell 35, to a different cell because he was having issues with his cellmate. *Id.* ¶ 5. On January 5, 2022,

Plaintiff was moved to H-unit cell 1.  *Id.* ¶ 6.

On January 19, 2022, Plaintiff sent a second Inmate Request to Defendant acknowledging the first cell change and requesting another because he was again having problems with his "celly." *Id.* ¶¶ 7–9.  On January 22, 2022, Plaintiff was moved from H-unit cell 1 to H-unit cell 59.  *Id.* ¶ 10.

On February 10, 2022, Plaintiff was assaulted by inmate Rashid, whom the Court assumes was his cellmate in H-unit cell 1.  *Id.* ¶ 12.

Plaintiff filed only two Level 1 grievances from January 1, 2022, through June 30, 2022. *Id.* ¶ 17.  The only grievance he filed that mentioned Defendant during this period was dated March 7, 2022, and received on March 8, 2022.  *Id.* ¶ 18.[1]  The grievance was rejected on March 22, 2022, as untimely filed.  *Id.* ¶ 19.  The rejection stated that the decision was not subject to further appeal.  Bennet Decl., Attach. 4, ECF No. 19-3 at 69.

Plaintiff did not submit any Levels 2 appeals between January 1, 2022, and June 30, 2022. Pl.'s L.R. 56(a) 2 St. ¶ 22.  Nor did he submit any Level 3 appeals during that period.  *Id.* ¶ 23.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A disputed fact is material only where the determination of the fact might affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  With respect to genuineness, "summary judgment will not lie if the

---

[1] The second grievance was an April 22, 2022, Level 1 Grievance concerning unrelated conduct by a different correctional officer.  Apr. 22, 2022, Inm. Grievance, ECF No. 19-3 at 79.

dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden of establishing there is no genuine issue of material fact in dispute will be satisfied if the movant can point to an absence of evidence to support an essential element of the non-moving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears an initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. A movant, however, "need not prove a negative when it moves for summary judgment on an issue that the [non-movant] must prove at trial. It need only point to an absence of proof on [the non-movant's] part, and, at that point, [the non-movant] must 'designate specific facts showing that there is a genuine issue for trial.'" *Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) (quoting *Celotex Corp.*, 477 U.S. at 324). The non-moving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his or her favor. *Anderson*, 477 U.S. at 249. If the non-movant fails "to make a sufficient showing on an essential element of [their] case with respect to which [they have] the burden of proof," then the movant will be entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323.

In considering a motion for summary judgment, a court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (citation and internal quotation marks omitted). "Only when reasonable minds could not differ as to the

import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

Moreover, the Court bears in mind that a *pro se* litigant's filings must be liberally construed to raise the strongest arguments they suggest. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *see also Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) (collecting cases regarding the "special solicitude" afforded to *pro se* litigants).

### III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

The Court holds that Plaintiff may not proceed with his Eighth Amendment claim against Defendant because Plaintiff has failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA").

#### A. Legal Standard

The PLRA requires a prisoner pursuing a federal lawsuit to exhaust available administrative remedies before filing a federal lawsuit related to prison conditions under 42 U.S.C. § 1983. *See* 42 U.S.C. § 1997e(a) (providing in pertinent part that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted"); *see also Ross v. Blake*, 578 U.S. 632, 635 (2016). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The PLRA requires "proper exhaustion," meaning that the inmate must complete all steps required by the administrative review process applicable to the institution in which he is confined and do so in compliance with the relevant procedural rules. *Jones v. Bock*, 549 U.S. 199, 218

(2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "using all steps that the agency holds out and doing so properly"). "Exhaustion is mandatory—unexhausted claims may not be pursued in federal court." *Amador*, 655 F.3d at 96; *see also Jones*, 549 U.S. at 211.

Prisoners "cannot satisfy the PLRA's exhaustion requirement solely by . . . making informal complaints" to prison officials. *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007); *see also Day v. Chaplin*, 354 F. App'x 472, 474 (2d Cir. 2009) (summary order) (affirming grant of summary judgment for failure to exhaust administrative remedies and stating that informal letters sent to prison officials "do not conform to the proper administrative remedy procedures"); *Timmons v. Schriro*, No. 14-CV-6606 RJS, 2015 WL 3901637, at *3 (S.D.N.Y. June 23, 2015) ("[T]he law is well-settled that informal means of communicating and pursuing a grievance, even with senior prison officials, are not sufficient under the PLRA."). Similarly, the Supreme Court has held that the requirement for proper exhaustion is not met when a grievance is not filed in accordance with the deadlines established by the administrative remedy policy. *Jones*, 549 U.S. at 217–18 (citing *Woodford*, 548 U.S. at 93–-95).

An incarcerated plaintiff "is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 578 U.S. at 642 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). The Supreme Court has identified three circumstances where an administrative procedure is considered unavailable: (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when a procedure is "so opaque that it becomes, practically speaking, incapable of use;" or (3) "when prison administrators thwart inmates from taking advantage of a grievance process through

5

machination, misrepresentation, or intimidation." *Id.* at 643–44.  In turn, the Second Circuit has noted that "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" *Williams v. Correction Officer Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016).  In considering the issue of availability, however, the Court is guided by these illustrations.  *See Mena v. City of New York*, No. 13-CV-2430(RJS), 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016).

Because failure to exhaust administrative remedies is an affirmative defense, the defendant bears the burden of proving that the plaintiff did not exhaust his administrative remedies.  *See Jones*, 549 U.S. at 216.  Once the defendant establishes that administrative remedies were not exhausted before the inmate commenced the action, the plaintiff must establish that administrative remedy procedures were not available to him under *Ross*, or present contrary evidence showing that he did in fact exhaust his administrative remedies.  *See Smith v. Kelly*, 985 F. Supp. 2d 275, 284 (N.D.N.Y. 2013) ("[O]nce a defendant has adduced reliable evidence that administrative remedies were available to the plaintiff and that the plaintiff nevertheless failed to exhaust those administrative remedies, the plaintiff must then 'counter' the defendant's assertion by showing exhaustion [or] unavailability").

      B.     <u>Administrative Directive 9.6</u>

The general grievance procedure for the Connecticut Department of Correction ("DOC") is set forth in Administrative Directive 9.6.  *See* Bennett Decl., Attach. 1, ECF No. 19-3 at 10–22 (current version of Directive 9.6, which was in effect at the time Plaintiff filed this action).  An inmate must first attempt to resolve the matter informally, by verbally discussing the issue with an appropriate staff member or supervisor.  A.D. 9.6 ¶ (6)(a)(i)(1)–(2).  If attempts to resolve the matter verbally are not effective, or if the inmate elects not to seek verbal resolution, the inmate must make a written attempt to resolve the issue informally using form CN 9601 (the "Inmate

6

Request Form"), by sending the form to the appropriate staff member or supervisor. A.D. 9.6 ¶ (6)(a)(i)(2)–(3).

If an inmate does not receive a response to the written Inmate Request Form within fifteen business days, or the inmate is not satisfied with the response to his request, he may file a Level 1 grievance on form CN 9602. A.D. 9.6 ¶ (6)(a)(ii)(1)–(2). In either situation, the Level 1 grievance must be filed within thirty calendar days from the date of the occurrence or discovery of the cause of the grievance and should include a copy of the response to the written request to resolve the matter informally or explain why the response is not attached. A.D. 9.6 ¶ (6)(a)(ii)(2)–(4). The Unit Administrator shall respond in writing to the Level 1 grievance within thirty business days of his or her receipt of the grievance. A.D. 9.6 ¶ (6)(b)(3).

The inmate must appeal the disposition of the Level 1 grievance by the Unit Administrator, or the Unit Administrator's failure to dispose of the grievance in a timely manner, through a Level 2 appeal. A Level 2 appeal must be filed on form CN 9604 within five calendar days from the inmate's receipt of the decision on the Level 1 grievance. A.D. 9.6 ¶ (6)(b)(ii)(1). A Level 2 appeal of the Unit Administrator's failure to dispose of the Level 1 grievance in a timely manner must be filed within sixty-five days from the date the Level 1 grievance was filed by the inmate. Level 2 appeals are decided by the District Administrator. A.D. 9.6 ¶ (6)(b)(ii)(2). The District Administrator must respond to the Level 2 appeal in writing within thirty business days of receipt of the appeal. A.D. 9.6 ¶ (6)(b)(ii)(4).

Level 3 appeals are restricted to challenges to department policy, the integrity of the grievance procedure, or Level 2 appeals to which there has been an untimely response by the District Administrator. A.D. 9.6 ¶ (6)(b)(iii). Any Level 3 grievance appeal filed due to the inmate not receiving a timely response to his Level 2 grievance appeal must be filed within sixty-five days

of filing the Level 2 grievance.  A.D. 9.6 ¶ (6)(iii)(2)(a).

## IV.     DISCUSSION

The Court holds that Plaintiff failed to properly exhaust available administrative remedies before filing this suit.  As no exception to the exhaustion requirement applies, Defendant is therefore entitled to summary judgment.

As noted above, the administrative remedy process begins with either an informal verbal conversation with the appropriate staff member or a written Inmate Request form.  Plaintiff concedes he submitted only two Inmate Requests to Defendant regarding his safety, on January 2, 2022, and January 19, 2022.  Pl.'s L.R. 56(a)2 St. ¶ 17.  This is supported by the declaration of Jessica Bennett, the Administrative Remedies Coordinator from MacDougall, and the attached exhibits.  In the Request dated January 2, 2022, Plaintiff noted that any slight noise would cause his cellmate to swear at him and requested to be transferred to a new cell.  Jan. 2, 2022, Inm. Req. Form, ECF No. 19-3 at 73.  Plaintiff's request was granted, and he was transferred from H-Unit cell 35 to H-Unit cell 1 on January 5, 2022.  *See* Snyder Decl., ECF No. 19-4 ¶ 6.  In the request dated January 19, 2022, Plaintiff acknowledges that Defendant had granted his previous request and moved him to H-1 Unit cell 1.  Jan. 19, 2022, Inm. Req. Form, ECF No. 19-3 at 71–72.  But Plaintiff stated that his new cellmate in cell 1, whom he does not name in the Request, was threatening to kill him, and requested that he be transferred to "H-2 or J- Unit" or even to a different facility altogether.  *Id.*  Plaintiff's cell transfer request was granted, and he was moved on January 22, 2022, to cell 59, which was located in the H-2 Unit.  Snyder Decl., ECF No. 19-4 at ¶ 8.

After Plaintiff was assaulted on February 10, 2022, Pl.'s L.R. 56(a)2 St., ¶ 12, he did not file any Inmate Requests related specifically to the assault.  Rather, he filed a Level 1 grievance on March 7, 2022, which referenced his January 2022 Inmate Requests regarding his concern for

his safety within the prison. ECF No. 19-3 at 69–70. The Level 1 grievance did not mention the date of the assault. *Id.* Instead, Plaintiff stated: "That day I seed [sic.] [the assailant] he was coming to me. But I think he was going to ask me how much he was owed me. But I was wrong. He was pu[n]ched me. After that I don't know. I find out was my nose was broken. Two Inmate Request Included. One dated 1/2/22 second one dated 01/19/2022." *Id.* Because the latest Inmate Request that Plaintiff referenced was dated January 19, 2022, which is more than thirty days before his March 7, 2022, Level 1 grievance, the prison rejected the Level 1 grievance as untimely filed. *See* ECF No. 19-3 at 69 (rejecting Level 1 grievance because it was not filed within 30 days of the January 19, 2022, Inmate Request).

The Court agrees the Level 1 grievance was untimely filed. To the extent his Level 1 grievance was the next step in the administrative process to follow up on his January Inmate Requests, Plaintiff was required to file the Level 1 grievance by February 18, 2022—thirty days after his January 19, 2022, Inmate Request (and eight days after the assault). As he failed to do so, the Level 1 grievance was properly denied as untimely.[2] Since proper exhaustion of administrative remedies requires compliance with all deadlines set forth in the administrative process, the Court must conclude that Plaintiff failed to properly exhaust administrative remedies regarding his claim that Defendant failed to protect him from the assault.

Plaintiff argues, alternatively, that he should be excused from the exhaustion requirement because "a remedy was not available to him as he could not foresee an assault coming." Pl.'s

---

[2] Alternatively, Plaintiff could have filed a new Inmate Request following the February 10, 2022, assault, and then pursued the available administrative remedies related to that new Inmate Request. But it is undisputed that he did not do so. Although the prison claimed untimeliness, an independent basis for the rejection of Plaintiff's Level 1 grievance may have been his failure to first pursue informal resolution after the assault. Instead, the prison considered the January Inmate Request forms attached as prior attempts at informal resolution of the matter and then concluded the grievance was untimely.

Another potential alternative is that Plaintiff could have filed his Level 1 grievance between the assault on February 10, 2022, and the February 18, 2022, deadline. Again, it is undisputed that he did not do so.

Mem. Opp. Def.'s Mot Summ. J., ECF No. 22-2 at 1.  Remedies are only considered unavailable, however, when they are incapable of providing "some relief for the action complained of." *Booth*, 532 U.S. at 738.  Plaintiff took advantage of the prison's administrative procedures to file a grievance after the assault (albeit an untimely one).  Although a post-assault grievance could not have protected Plaintiff from the assault, courts require exhaustion of administrative remedies even in failure-to-protect cases.  *See, e.g., Carleton v. Annucci*, No. 9:17-CV-0245 (MAD/TWD), 2018 WL 7917921, at *7 (N.D.N.Y. Nov. 21, 2018); *Urena v. Fischer*, No. 9:08-CV-1309 (NAM/GHL), 2010 WL 2134564, at *6 (N.D.N.Y. Apr. 16, 2010); *Wilson v. Keane*, No. 02 Civ. 5256 (DLC), 2003 WL 22132865, at *1 (S.D.N.Y. Sept. 16, 2003).  Moreover, the PLRA's proper exhaustion requirement "applies to *all* inmate suits about prison life," including "particular episodes" like the inmate assault here.  *Porter*, 534 U.S. at 532 (emphasis added).  In *Porter*, the Supreme Court reversed the Second Circuit's holding than an unexpected event like an assault by a correctional officer excuses the proper exhaustion of remedies.  *Id.* at 522–23; *see also Reynoso v. Swezey*, 238 F. App'x 660, 662 (2d Cir. 2007) (summary order) (affirming grant of summary judgment when plaintiff failed to exhaust remedies related to a singular incident of assault).  The Court is hard-pressed to conclude that the prison's procedures were unable to provide Plaintiff *any* relief, even after the assault occurred.  *See Booth*, 532 U.S. at 741 ("Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures.").

Nor is there a genuine dispute about whether prison officials somehow thwarted Plaintiff's efforts to exhaust through "machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643–44.  Because the March 7 Level 1 grievance only mentioned the January Inmate Requests, prison officials reasonably concluded that the Level 1 grievance was untimely in relation to those Requests.  There is no evidence in the record from which the Court could conclude that the prison's

10

failure to timely inform Plaintiff that he could initiate a new informal resolution after the assault was the result of intentional malfeasance designed to thwart Plaintiff's efforts at exhaustion.

Finally, Administrative Directive 9.6's requirements, while rigorous, are not so opaque that they are incapable of use. *See Riles v. Buchanan*, 656 F. App'x 577, 581 (2d Cir. 2016) (summary order).

Plaintiff therefore has not shown, nor has the Court otherwise found, a reason to excuse his failure to exhaust. While the Court acknowledges his efforts to exhaust, "mandatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." *Id.* at 580 (quoting *Ross*, 578 U.S. at 639).

Thus, Defendant's motion for summary judgment is granted on the ground that Plaintiff failed to properly exhaust his administrative remedies before commencing this action.

## V.     CONCLUSION

For the reasons described in herein, Defendant's motion for summary judgment is GRANTED. The Clerk is directed to enter judgment and close this case.

**SO ORDERED** this 26th day of July, 2024, at Hartford, Connecticut.

*/s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE

11